Good morning, Your Honor. I would like to take this opportunity to respond to two cases cited by the government in their answering brief, U.S. v. Arvizu and U.S. v. Herbert Tinoco. My argument is that these two cases that the government is relying on are very different on the facts. Arvizu reaffirmed the holding of Ornella's that when reviewing courts look at the determination of reasonable suspicion, we have to look at the facts of each case. It's a very fact-specific inquiry, even though it's the Novo review. My argument is that looking, and it permits this Court to look at the facts of Arvizu and Herbert Tinoco cited by the government and say how different those facts are from the case at hand here. That is exactly what the U.S. v. Arvizu says. And my argument is that the facts are completely, my case is completely different from Arvizu on many, many grounds. My case is very much like the trio of cases I cited in my brief, Rodriguez, Salinas, Hernandez, Alvarado, decided by the Ninth Circuit. I think looking at the factors in Arvizu, you have a checkpoint 30 miles close to the border. In my case, we have checkpoint 158 miles north of the border. Our case is not a border stop. It's not even an extended border stop. We have the defendant in Arvizu traveling on an unpaved, rarely-traveled road which runs parallel to Highway 191 near checkpoint. Usually this is traveled only by ranchers and foresters, rarely-traveled road. My client is driving on I-15 highway with regular traffic. He's not avoiding checkpoints. He's not taking side roads as it is in Arvizu. Have the agent confirmed that the truck had crossed the border before the stop was made? I'm sorry, Your Honor. I didn't hear the first part. Yes. I was asking if the agent had confirmed that the truck had crossed the border that morning before the stop was made. There was – she found out from the dispatch. Yes. She found out from the dispatch. But what I'm saying is that, Your Honor, he's not taking side roads, rarely-traveled roads like Arvizu's defendant. He's traveling on I-15 interstate highway. All right. But the agent did know that there was a border crossing before the stop was made. Sure. Yes. 9, 12 a.m., the dispatch told the Border Patrol agent that this guy crossed the border. Yes. It's true. Look at another factor that we have in Arvizu. They have magnetic sensors triggered showing passage of traffic on this rarely-traveled road. In Hernandez-Alvarado, the court compared and contrasted – this court compared and contrasted cases where there was reasonable suspicion found with cases there was no reasonable suspicion found and said, look, we need more particularized information, confidential tips, such as, for example, let's see, magnetic sensors triggered in Arvizu. Smugglers commonly avoid the checkpoint by taking side roads. In Arvizu, the Border Patrol agent received, in fact, on the same day, a report that a sensor had triggered on the same road that the defendant was traveling. In our case, we don't have that. But, counsel, don't we look at all of the circumstances rather than just taking each one and contrasting and comparing? We look at all of the information that the agent had. Yes, Your Honor, of course. And, in fact, I am not employing divide-and-conquer analysis as suggested by the government in their brief. No. But the methodology is totality of factors. But some of the factors should not be used in this calculus of reasonable suspicion. What factors should not be used? Well, let's look at the factors that are cited by the Border Patrol agent in my case. I-15 is used to smuggle drugs and illegal aliens from Mexico to the United States. That is not a permissible deduction that this particular individual is engaged in criminal activity. But it's not that alone. That's my point. Right. That's just one factor in the calculus. Yes, Your Honor. But I do believe that the cases we have, Rodriguez-Salinas, Hernandez-Alvarado, employ the same methodology as U.S. Arvizu, totality of factors. Totality of factors, here's the thing. It doesn't give unbridled discretion to the officer to say, you know what, I have this hunch, I have this suspicion, I'm going to stop these people. Look at the factors in Rodriguez. We have Border Patrol agent comes to court and gives the exactly same story. You know, I was wondering if they could come up with something else. Same story again and again. Maybe it's because it's the same activity. But, Your Honor, let's look how similar it is. They say they don't look at us, they don't acknowledge us when they pass by. They slow down. How similar it is to Rodriguez. The type of the truck he's driving. Baja license plates. He's Mexican. It's completely the same subjective impressions. And look at the ---- No, no, it's not a subjective impression to say that when the agent said she slowed down to 45 miles per hour and only then did your client pass her on the freeway with a speed limit of 70 miles per hour. Your Honor, I'm glad you brought that. The fact was admitted and by the testimony of the Border Patrol agent, there was traffic on that day. And the stop occurred minutes after the checkpoint closed. There was traffic, a lot of heavy traffic on the road. And my client was driving on number three lane when the stop occurred. This is a slow lane. But the agent testified that he slowed way down to allow her to stay in front of him essentially. Only when she got down to the 45 miles did he pass. And as I understand it, the district court found the agent credible and found your client's testimony to the contrary not credible. Sure. So as far as us reviewing the facts here. Your Honor, the NOVA review ---- But not for the factual findings. Correct. No, the NOVA review, I'm not saying that we have to look at the factual findings and question factual findings by the district court. My argument is that these factors in combination are the same as offered in Rodriguez, Salinas, and Hernandez-Alvarado. Look at the factors in Hernandez-Alvarado. Again, reduced speed. The defendant reduced speed from 65 to 55. My client, Your Honor, first of all, let's say he reduced speed. What does that tell us? Anyone can reduce speed on riding highway speed when they see a government car, when they spot a government car. I don't think when you look at the totality of factors here, you have reasonable deductions, reasonable permissible deductions. But the border patrol agent's testimony was people don't normally slow down when they see them because they know they're not traffic enforcement officers. So that's why it was an indication to her that something was amiss because people don't normally slow down for border patrol cars. That's assuming that people from Mexico would know that border patrol agent cannot give speeding tickets. How would he know that? The border patrol agent offered a lot of speculations. Like, let's look at the, you know, speculation that he crossed the checkpoint minutes after it closed. She did not offer any information as to when he, whether he took breaks on the road. She didn't know that. What road she took, what route she took from check, the Calexico port of entry to the checkpoint. And, in fact, she says, oh, you know, it would have taken him two and a half hours to cross the checkpoint, but how do we know what route he took? So there are a lot of speculations offered here. We understand your argument. Could you move to the safety valve argument, please? What is it? Safety valve. Sure. Your Honor, I just think that there were a lot of things that the court didn't look at. I think they misinterpreted the guidelines in terms of applying the safety valve reduction. Here my client made the proffer, participated in the proffer. The government relied very much so on his earlier inconsistent statements of motion to suppress and his early apprehension conversation with the Border Patrol agent. I don't know. Let me interfere and just make sure I'm understanding your position. With the safety valve and the truthful proffer, if you will, you gauge that at the time the proffer is made, right? You don't go back and look at statements that were made, for instance, at the suppression hearing and say he wasn't truthful then. If the person comes clean, tells the truth before sentencing, they're entitled to the safety valve. Right.  Right. What the district court found is that during that proffer session, your client wasn't truthful. Well, Your Honor. And so why should we disturb that finding? Well, Your Honor, because the district court said he's untruthful without saying why. Here's what troubles me. The district court wrote, said in his sentencing, during sentencing that because the defendant did not make sense at the motion to suppress, because he was not credible at the motion to suppress, and because he made inconsistent statements after at the proffer, then therefore he doesn't find him eligible. So I think the district court completely relied on his earlier inconsistent statements of lies. Here's page 8 of the transcript, of the sentencing transcript, page 209 of the excerpt. The judge said, nothing that you've submitted, the confusing and inconsistent account, inconsistent account, of how he came to be driving this vehicle loaded with drugs across the border, seems to me to be proven or even credible. There are far too many inconsistencies and gaps. Then he says he's referring specifically to a specific area within the government's sentencing statement, where the government is discussing the proffer statement that was made. So it seems to me the district court did make some pretty, perhaps it could have been fuller, but a pretty clear statement that he found your client was not providing truthful statements during the course of the proffer. So is it your position the district court would need to hear evidence on that, or that there would have to be some in-court testimony on this issue if there's a disagreement? What exactly is your position? Because I'm seeing the district court made findings. Your Honor, I think that, I mean, I would like to ask the Court to tell me specifically which part of the sentencing, because there are a lot of things, details, very important details in the proffer that were appointed by the government and the Court. I would like to go one by one, because in general I can't answer your question. I'd like to go specifically each, you know, finding by the Court. Okay. See, what you're saying, what you're asking us to do, then, is to look behind the district court's findings. He's saying he didn't find credible what your client said during the proffer session. And so is it our role to sit here now and to have you go point by point by point through this and give an explanation as to why a particular – I have to say, reading the proffer to me, it's not credible. Okay.  Your Honor, I think that the proffer was written by the government. And I think there were certain things that I pointed in my brief were not accurate in the proffer. For example, let me give you an example. I think why I want an example, because I can't articulate my argument without this. The government said, oh, you know what, he never – he always told us inconsistent statements about how his truck had been stolen and how he recovered. And then they said, oh, motion to suppress this says one thing. Apprehension, you know, at the stop, he says another thing. And then the government says, oh, I agree. But we have specific – looking at the motion to suppress transcript, looking at the stop and seizure apprehension report, it is not clear whether my client ever lied about that or whether he made inconsistent statements during the proffer. All he said is that, you know, I had the police go look at the truck. And he never – basically, there's absolutely no – on the record, there's no corroboration of the government's position on this specific fact. But the – Why does there have to be corroboration? Well, Your Honor – The guidelines requires there to be corroboration before the court can deny the safety valve. Because, Your Honor, the defendant has the burden to go, you know, offer a proffer, right, by preponderance of evidence. And then the burden shifts on the government. The government then has to come back and say, look, this, this, this is untruthful. What case says that? That's Shrestha and Pujito Pimentel that is cited in my brief, Your Honor. And I – and it's – Okay. I'll look at it. I'll look at it. Yes. So – Because you only have a minute and 48 seconds. Do you want to save some time for rebuttal? Yes. Thank you. All right. Thank you. We'll hear from the government. Thank you, Your Honors. One of the issues on appeal is whether, under the totality of the circumstances, the Border Patrol agent had an objectively reasonable basis to stop the defendant in this instance. And the government's position is that it did for multiple reasons. First of all, the factors that the Border Patrol agent relied on were very comparable to the factors that were discussed in my brief. The specialized training of the officer, the objective facts the officer reviewed, which could have been meaningless to an untrained person, combined with permissible deductions by the officer, formed a legitimate basis of reasonable suspicion. And as Your Honor has noted, a divide-and-conquer analysis is not permissible in this case. So it's important to look at the totality of the circumstances when assessing whether reasonable suspicion was met in this particular instance. And here the government's position is that it was. But what about opposing counsel's argument that it's the same factors all the time? It's like the agents are following a formula. Your Honor, I think, had a very good point. It's the same factors because it's similar fact patterns all the time, and agents are looking for particular things. The agent in her declaration stated that she had been briefed on certain issues relating to smuggling that she was looking for, that all agents are looking for. The location of where the car, of where the truck was found, for instance, I-15 being a common place for alien smuggling, is in fact one of the specific factors that Berber or that Garcia-Baron says that you can rely on. The fact that the car appeared large to the agent and that large cars are usually used in smuggling is another factor the agent could have relied on. But more importantly than that, the agent made very clear that they wouldn't have, that she wouldn't have pulled the defendant over if it had only been for the car, if it had only been for the fact that he was driving down I-15. There were other very particularized observations made by the agent that day that caused her to believe that the defendant might be engaged in criminal activity, including the fact that the agent stopped so substantially on the freeway. This wasn't a 10-mile-per-hour stop like in Hernandez-El Dorado. This was a 25-miles-per-hour stop or slowdown on the freeway. The evidence shows that the other cars were going. Reflect how fast the agent and the defendant were going before the agent slowed down. It does, Your Honor. The agent said that traffic was going 70 to 65 miles. I think the speed limit was 70 miles per hour on the freeway, that all the cars were going 70 to 65 miles an hour. And then the agent discusses in her declaration how she slowed down progressively more. So I think she was slowing down like 10-mile-per-hour increments and how the defendant's car was also slowing down at that rate to try to avoid passing her. The agent also made very clear, and this was like a very vivid particularized moment in the declaration, she said that the defendant slowed down so substantially that there were cars behind him slowing down and having to, like, move around him. So the 25 miles per hour slowing down, in the government's opinion, is comparable to a lot of these other cases where there was an avoidance of a checkpoint or a decision to sort of speed off the freeway. It's similar to that. It's an evasion of law enforcement, which is not something that an innocent person would do, 25 miles per hour on a freeway or slowing down to 25 miles an hour. 25 miles an hour less than other cars are going on the freeway is actually a substantial amount of slowing down that's not consistent with innocent behavior. That freeway checkpoint closed down at the same time every day or randomly different times? That wasn't developed in the record, Your Honor. All that the record reflects is that the freeway, that the checkpoint closed, I think, around noon that particular day. But what an important point to mention is opposing counsel got up here and talked about how it couldn't be possible if the checkpoint had closed that traffic going north would be going fast. But that is developed in the declaration. The traffic to the south of the checkpoint was slow because the cars were stopping to go through the checkpoint. But as soon as the checkpoint opened, it just flushed all the traffic out. Traffic was going at 65 to 70 miles per hour, and Judge Matz gave credibility to the witness. She said that she was truthful in her testimony. If Your Honors have no more questions on the reasonable suspicion point, the government would like to speak about the sentencing unless there are additional questions. It appears not. Were you the trial attorney? I was, Your Honor. Was the proffer written by the government? The proffer was written by the DEA agent who was present at the time of the proffer. So how did that come about? How did the DEA agent get the information that was in the proffer? Well, we set up a proffer session. The defendant came in, sat in with his attorney, and we just asked him a series of questions. The DEA agent took notes, and then he assessed the situation and wrote the report. And I'm actually very happy. I attached it to the sentencing position paper so Your Honors could see, you know, the full record of what the DEA agent observed, and it was consistent with my observations as well. And, you know, the brief sort of suggests that we weren't willing to give it to him or that we didn't want to give it to him. But I assure Your Honors that if we could have given it to him, we would have. You know, it's the defendant's burden to show that he's being truthful. It's the defendant's burden to tell the government everything about the crime he's committed and about everyone else involved in the crimes. And there were just so many inconsistencies in the story, ranging from the fact that if this person by the name of Paco was going to threaten him to take drugs over the border, why would they have stolen his car to then fill it up with, you know, what could be considered millions of dollars of cocaine and leaving it on the street for him to find? That just doesn't make any sense, Your Honor. And even very sort of minor details relating to where Paris, California was, because apparently Paco's men told the defendant to drive the truck to Paris, California. He couldn't give the right directions to Paris, California. He couldn't give the name of any auto shop that he said he went to, even though he crossed the border repeatedly. And he said that he was crossing it to buy car parts. He couldn't even mention or he couldn't even give us the name of a type of car part that he was purchasing. So, you know, the government's position is that the defendant did not meet his burden. And, you know, even assuming if he did, I think the government successfully rebutted it by showing the inconsistencies. And, you know, as Your Honor pointed out, the government can do that in multiple ways. The government doesn't have to do an additional investigation as long as it shows that there are inconsistencies that don't rise to the level of the safety valve. Do you agree that the government has the burden to provide corroborating information or contradictory information in order to deny the safety valve recommendation? Your Honor, I think the case law says that the government needs to rebut the presumption by showing the information is untrue. And as I think Your Honor pointed out, I don't think there's any case law that gives the government an added burden of having to do anything in particular so long as it shows that the information is untrue and incomplete. And Judge Matz adopted those findings as well because the government did, in the government's opinion, successfully show that the information was untrue and incomplete. And, you know, and not just a piece of information. Multiple aspects of the proffer were shown to be untrue and incomplete. What's your view on whether or not the credibility determination made during the motion to suppress can be considered in determining whether or not the safety valve relief should be awarded? Your Honor, I think that's another sort of piece of the puzzle. I think that it's, you know, I don't think there's any case law on point that suggests that that's one of the specific aspects that a court must find in order to deny a safety valve. But I do believe, I mean, I think the government did point out in its, or the DA agent wrote in his proffer report that the defendant was acting very evasively, eyeshifting, long, drawn-out discussions of what he did, and that it was really consistent with how he acted at the motion to suppress hearing. So if we were to sort of analogize it to, you know, the district court looking at his credibility at the motion to suppress hearing and making a decision, I think it would also be, you know, it would be, it would be a good piece of the puzzle for a district court to also see that he was uncredible at the time of his proffer. But I don't think there's any case law. My recollection was that at sentencing, the district court judge is free to consider everything that preceded the sentencing. I think that's right, Your Honor. That's absolutely right. And so I think Judge Matz, having actually observed the defendant testify during the motion to suppress and having read the proffer report that also sort of indicated a similar kind of behavior, I think Judge Matz, you know, would have seen that his credibility remained, you know, close to zero, I think, as he wrote in his order. But it's not unusual for a defendant to not tell the truth initially. In, you know, someone would say he was Mirandized, and then they don't tell the truth. But it's pretty rare for a safety valve to be denied based on lack of telling the truth in a proffer session. Because the defendant's interest changes by that point in time. Absolutely. So, I mean, it seems to me a district court judge isn't really tied that much into what happened before. The issue really you're facing is at that point in time was the person being truthful. That's absolutely true, Your Honor. In that proffer session. That's absolutely true. And the case law that's cited by opposing counsel, Shrestha and Mejia Pimentel, are cases that are precisely on that point. They deal with issues relating to them being untruthful at, you know, at trial and then going into a proffer. And in that particular instance, if they're truthful in their proffer, then the, you know, a safety valve isn't allowed to be denied them. But in this particular instance, the defendant was consistently untruthful. I agree with Your Honor that if the defendant had been truthful at the proffer session, all of the prior stuff relating to whether he lied at the motion to this hearing would be irrelevant. And a district judge can't say I'm just not going to believe the proffer because I've seen this person testify, and I just don't think he's a credible guy. That's absolutely true, Your Honor. He could not do that. A hundred percent not. The district court could not do that. I think what was specific or what was, you know, particular about this case was that he continued to lie and that Judge Metz had already sort of recognized that. And when we referenced it, he sort of, you know, he remembered how he acted. And he's not required to ignore what preceded the proffer session. Correct, Your Honor. But I also believe that if we had recommended a safety valve based on the truthfulness of his proffer, that Judge Metz would have granted it to him. And this is not an issue relating to the interpretation of the safety valve laws, as opposing counsel tries to say. It's an application of the facts. It's a determination of whether or not he was truthful. Absolutely. Unless Your Honors have any additional questions of the government. It appears not. Thank you, counsel. Thank you. Rebuttal. Thank you, Your Honor. I just wanted to focus a little bit on the safety valve reduction. And I do believe that if the Court looks more closely to the cases I cited in my brief, Shrestha and Prihito-Finental, it shows clearly that the government cannot look at earlier statements, earlier lies to determine if the defendant is eligible for safety valve reduction. The defendant told one story at the stop, another story at the trial. He recanted his knowledge of drugs. Told a completely different story at trial. But it was true. The story he told the second time was deemed to be true. So there wasn't an issue. I think the original confession was found to be true. Earlier when he was stopped by the Border Patrol agents, he said, I knew there were drugs. And then he recanted his knowledge. He went to trial. He said, no, I didn't know. And then the Court, at sentencing, he came back and came clean and said, you know, a lot of things he. . . Let's say that you have a situation where somebody testifies at a suppression hearing. The judge finds the person not credible. Right. They then go to proper session, and they tell the exact same story. Mm-hmm. Clearly, the district court can say, I already found that not credible. Safety valve denied without any further discussion. But, Your Honor, here's the interesting thing right there. The most important thing is Shrestha says, yes, the initial burden is by preponderance evidence on the defendant. But later, the government has to come back and offer specific things to say why he's untruthful. In this case, we don't have that. The government did not meet their burden. There is a burden on the government, specific burden. It's in Shrestha. But what is that burden? What is that burden in your view? To corroborate, to say why, to show. . . You see the language in Shrestha that, in your view, imposes a corroboration burden on the government. Well, at this moment, let me just take a moment. And I don't find that, Your Honor. In its interest, I know that, because I've cited in my book. But I would think, if that's crucial to your argument, that you would have that right at the tip of your tongue. I didn't think that that would be a big issue, Your Honor. I was more focused on the motion to suppress. Well, never mind. We've read the case. Okay. All right. Could you wrap up, because your time is out. That's right. Your Honor, I would like to focus also again on Hernández-Alvarado. Hernández-Alvarado says, yes, we employ the methodology of fatality factors. But that doesn't necessarily mean we are going to give unbridled discretion to the Border Patrol agent to stop people too many on the basis of hunch that would bring too many individuals under her, under the analysis. Look at the language of Hernández-Alvarado. The Court says, consider jointly these factors are insufficient to justify and investigate the factors in that case. While they may allow certain inferences to be drawn, they describe too many individuals to create a reasonable suspicion that this particular defendant is engaged in criminal activity. And I just wanted to point, I know I'm out of time. We understand your argument, counsel. You made this argument when you first were here. We understand it. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the Court. Thank you. The next case on calendar for argument is Get Outdoors v. City of Alcohol.
judges: Seabright, Goodwin, Rawlinson